THE PEOPLE OF THE STATE OF NEW YORK ex rel. FLOYD SANFORD, Relator, *v.* WALTER N. THAYER, JR., Superintendent of the State Institution for Defective Delinquents at Napanoch, Respondent.

County Court, Ulster County, April, 1923.

Incompetent persons — writ of certiorari — transference of mental defective from Matteawan to institution for defective delinquents — constitutionality of Insanity Law, § 140.

Upon the finding of a commission appointed by the court that relator, then under indictment, was insane, he was committed to Matteawan State Hospital to be returned for trial should he regain his sanity. Thereafter and pursuant to section 140 of the Insanity Law which provides "Any inmate held on the order of a court or judge in a criminal proceeding who, in the opinion of the medical superintendent is a mental defective and who does not show evidence

of insanity, may be transferred by the state commission for mental defectives to a state institution under their jurisdiction on the application of the superintendent accompanied by a certificate of mental defect executed by two qualified examiners," etc., he was transferred by the state commission for mental defectives to a state institution for defective delinquents. *Held,* that said statute is of doubtful constitutionality, but the proof taken upon the hearing of a writ of certiorari indicating that relator while not insane is mentally defective, the writ will be dismissed and relator remanded.

Hearing on writ of certiorari.

*Charles D. Newton,* attorney-general (*Henry C. Henderson,* of counsel), for state.

*Floyd Sanford,* relator in person and by *Leroy Lounsbery,* his counsel.

Fowler, J. A hearing was had in this matter some weeks ago, at the close of which permission was given to the respective attorneys to file briefs as to the questions raised.

It appears that the relator was held for a crime by a grand jury of Erie county, and while awaiting trial was found insane by a commission appointed by the court, and upon such finding was committed to Matteawan State Hospital at Beacon, to be returned to Erie county for trial should he regain his sanity.

In May, 1922, he was transferred to the State institution for defective delinquents at Napanoch as a mental defective pursuant to the provisions of that portion of section 140 of the Insanity Law which reads: "Any inmate held on the order of a court or judge in a criminal proceeding who, in the opinion of the medical superintendent is a mental defective and who does not show evidence of insanity, may be transferred by the state commission for mental defectives to a state institution under their jurisdiction on the application of the superintendent accompanied by a certificate of mental defect executed by two qualified examiners," etc.

The proof here indicates that the relator is no longer insane. There is, however, little doubt under the proof that he is mentally defective, and were an application before me to commit as such, upon the proof made, I would have no hesitation is so doing.

A question which has interested me, however, is the right of the legislature to vest in the state commission the power to adjudge a man a mental defective even though the man is at the time in a state institution. There would seem to be a grave question whether the power to so adjudge is not a judicial one. Governmental powers fall within one of three powers, the legislative, the executive and the judicial; the state commission which here acted is a part of the executive branch of our state government, and its powers are administrative.

The determination of the question of a man's sanity, or insanity, or the determination of the alleged mental defectiveness, particularly where such determination may lead to the depriving of liberty, must be a judicial function.

The legislature has attempted to vest such power in the state commission; that such power can, under our Constitution, be so vested is very doubtful to say the least.

The right given the commission to transfer a person judicially declared insane, or a mental defective, from one institution to another, cannot be questioned, for such an act is administrative in its nature, but the right to declare in the first instance a person a mental defective cannot be called an administrative function.

The argument is pointed by the provisions of the Mental Deficiency Law (§ 24-d) which provides that where the term of a convict expired and in the opinion of the superintendent such a convict continues a mental defective, the superintendent must apply to a judge of a court of record and cause an examination to be had, and if such examination discloses that the convict still be a mental defective, he (the judge) shall order his retention.

So long as there is any doubt whatsoever of the constitutionality of the provisions of the State Code, I do not feel that the relator, clearly a mental defective, should be discharged, but I do suggest that there should be sought an amendment of the statute by which cases which are not reached under said section 140 of the Insanity Law may be cared for by procedure similar to that outlined in section 24-d of the Mental Deficiency Law.

The writ dismissed and relator remanded.

Ordered accordingly.